UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| FRANK G. SILVA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. EP-05-CA-0443-FM |
| | § | |
| MICHAEL CHERTOFF, | § | |
| SECRETARY, DEPARTMENT | § | |
| OF HOMELAND SECURITY | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS OR FOR SUMMARY JUDGMENT**

**TO THE HONORABLE FRANK MONTALVO, UNITED STATES DISTRICT JUDGE:**

Comes now FRANK G. SILVA, Plaintiff, and files this Response to Defendant's Motion to Dismiss or for Summary Judgment, and would show the following:

This is a suit under the Rehabilitation Act, Title VII, and the Age Discrimination in Employment Act, for discrimination on the basis of disability, national origin, and age, as well as retaliation for opposing discrimination. There is substantial summary judgment evidence that Frank Silva was removed from his position as electronic technician; denied a reasonable accommodation; and ultimately terminated because of his disability, age, national origin, and opposition to discrimination. Pursuant to Local Rule CV-7(b), the factual basis for this response is detailed in Plaintiffs' Appendix to this response, filed contemporaneously with this pleading, and incorporated herein by reference. Defendant's motion to dismiss or for summary judgment should be denied.

**I.     Governing legal standards**

A motion for summary judgment is properly granted only if there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). An issue is material if its resolution could affect the outcome of the action. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). In reviewing a motion for summary judgment, the Court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Prods. Co.*, 530 U.S. 133, 150, 147 L.Ed.2d 105, 120 S.Ct. 2097 (2000). The Court must disregard all evidence favorable to the moving party that the jury is not required to believe. *Id.*

Defendant does not specify the rule under which it moves to dismiss, but apparently relies on either Rule 12(b)(1) or Rule 12(b)(6). Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case. A motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his or her claim that would entitle him or her to relief. *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006 (5th Cir. 1998). To the extent Defendant seeks dismissal under Rule 12(b)(6), its reliance on evidence submitted to the Court requires the motion to be treated as a motion for summary judgment under Rule 56. *See* Fed.R.Civ.P. 12(b). Therefore, the standards described in the preceding paragraph govern the disposition of the motion.

**II.    The *McDonnell-Douglas* framework of analysis**

Direct evidence is usually unavailable in cases of intentional discrimination. *Thornbrough v. Columbus and Greenville R.R. Co.*, 760 F.2d 633, 638 (5th Cir. 1985). Therefore, a claim of discrimination or retaliation based on circumstantial evidence is often evaluated by applying the

familiar *McDonnell-Douglas* analysis. *See McDonnell-Douglas Corp. v. Green*, 411 U.S. 799, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Although *McDonnell-Douglas* is a case under Title VII, the same evidentiary framework has been applied to cases under other discrimination statutes. *See Reeves, supra* (applying *McDonnell-Douglas* to ADEA claim); *Handy v. Brownlee*, 118 Fed.Appx. 850, 854 n. 3 (5th Cir. 2004) (Rehabilitation Act). Under this analysis, the plaintiff has the initial burden to come forward with evidence establishing a prima facie case of discrimination or retaliation. Only a minimal showing is required to establish a prima facie case. *See Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 1094, 67 L.Ed. 2007 (1981) ("The burden of establishing a prima facie case of disparate treatment is not onerous"); *Bauer v. Albemarle Corp.*, 169 F.3d 962, 966 (5th Cir. 1999)("Only a minimal showing is necessary to meet this burden"). Once a prima facie case is made, the defendant must then come forward with a legitimate nondiscriminatory reason for its decision. If it does so, then the burden shifts back to the plaintiff to show that the defendant's explanation is pretextual, or otherwise demonstrate that his protected status was a motivating factor in the employment action. *See Rachid v. Jack in the Box, Inc.,* 376 F.3d 305, 309, 312 (5th Cir. 2004). "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves,* 530 U.S. at 148.

### III.  Prima facie case of disability discrimination.

#### A.  Silva was regarded as disabled

This suit was brought under the Rehabilitation Act of 1973, which prohibits the Border Patrol from discriminating against an individual with a disability. 29 U.S.C. § 701 *et seq.* The Rehabilitation Act was created to empower individuals with disabilities to maximize employment, economic sufficiency, independence, and inclusion and integration into society, through, among other things, the guarantee of equal opportunity; and to ensure that the Federal Government plays

a leadership role in promoting the employment of individuals with disabilities, especially individuals with severe disabilities, and in assisting States and providers of services in fulfilling the aspirations of such individuals with disabilities for meaningful and gainful employment and independent living. 29 U.S.C. § 701(b). "The basic purpose of [the Act] is to ensure that handicapped individuals are not denied jobs or other benefits because of the prejudiced attitudes or ignorance of others." *School Bd. of Nassau County v. Arline,* 480 U.S. 273, 284, 94 L. Ed. 2d 307, 107 S. Ct. 1123 (1987). The standards of the Americans with Disabilities Act also apply to determine whether a person is disabled within the meaning of the Rehabilitation Act. 29 U.S.C. § 794(d).

The term "individual with a disability" is defined as a person with an impairment that causes him to be substantially limited in a major life activity, or who is regarded by the Agency as having such an impairment. 29 U.S.C. § 705(20)(B). Silva does not allege that he actually had an impairment that substantially limited his ability to perform a major life activity; however, the Agency did regard him as having such an impairment. The Rehabilitation Act protects persons who are regarded as possessing such an impairment because society's accumulated myths and fears about disability and disease are often as handicapping as the actual physical limitations flowing from the impairment. *See generally Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489-90, 119 S.Ct. 2139, 2149-50, 144 L.Ed.2d 450 (1999). This prong of the definition covers individuals rejected from a job because of the myths, fears, and stereotypes associated with disabilities. *Id.* There are two apparent ways an individual may fall within this portion of the definition: a covered entity mistakenly believes that a person has a physical impairment that substantially limits a major life activity, or a covered entity mistakenly believes that an actual but nonlimiting impairment substantially limits a major life activity. *Id.*; *see also* 29 CFR 1630.2(l). Substantial evidence permits a reasonable jury to find that Defendant regarded Silva as disabled.

After his first injury, Estep instructed Silva that he would not be permitted to work until he was a "hundred percent." (Silva dep. p. 53, 88). Estep admits that Silva's injury caused him to be concerned about Silva's ability to perform the job. (Estep dep. p. 71). He believed that Silva's injury did not allow him to do the job. (Estep dep. p. 73). Furthermore, Defendant claims that it made arrangements to obtain a desk that would raise the computer and monitors to accommodate Silva's disabilities and permit him to work in the LECA position. Defendant refused to offer Silva any duties other than the LECA position, based on its position that no other position met his physical limitations. (Def. ex. 17). Additional summary judgment evidence indicates that another position was actually available (Retana dec. ¶ 7); and that both Mr. Uhl, the supervisor of the LECAs, and Silva's union representative informed him that the Border Patrol would not actually make an accommodation with respect to the LECA computer and desk. (Silva dep. p. 44, 47). Nonetheless, Defendant's statement that only the LECA position met Silva's physical limitations, and the contention that it would have accommodated Silva's limitations, inherently contradict its claim that it did not regard him as disabled. This contradiction creates a genuine issue of material fact to be resolved by the jury. The evidence permits a reasonable jury to find that Defendant perceived Silva as being substantially limited in his abilities, even though he was not actually so limited, and to conclude that Defendant regarded Silva as disabled.

  **B.**  **Silva was qualified to perform his position with reasonable accommodation.**

Defendant also argues that Silva is not entitled to the protection of the Rehabilitation Act because he was not a "qualified" individual, defined as an individual who, with or without a reasonable accommodation, can perform the essential functions of the position. Specifically, it argues that Silva could not hike mountains or climb towers. However, the evidence permits a reasonable jury to find that hiking mountains was not an essential function of the job; and that

Defendant could have allowed him the reasonable accommodation of bench work in the El Paso electronics branch.

Even after his second injury, Silva is fully capable of performing all of the duties of his job as listed in the job description. (Silva dep. p. 68). He can even climb the towers and climb mountains if necessary, without any accommodation. (Silva dep. p. 68-69). He was able to do so after his injuries, so long as he was permitted to climb at his pace. (Silva dep. p. 68-69).

Silva's ability to climb mountains was limited after his injury. However, it was not necessary for Silva to climb to remote mountain locations to perform his duties. (Silva dep. p. 10, 14). The position description for Silva's job mentions work in remote areas, but says nothing about climbing to those areas. (Silva dep. p. 13, 15, 18 & ex. 1). Most areas were accessible by road, and he would drive up to those sites. (Silva dep. p. 14). Silva also went to work upon Magdalena mountain for a couple of weeks by helicopter, rather than by climbing. (Silva dep. p. 12). Hillsboro likewise had a helicopter pad on top of the mountain. (Silva dep. p. 13). Silva spoke with a safety officer, Mr. O'Toole; O'Toole was concerned about why Silva was climbing mountains at all, since the Border Patrol had helicopters to take its agents to the work sites. (Silva dep. p. 15, 71-73). O'Toole stated that there was no reason for any technician to be climbing any mountain, and that the pilots were there for them. (Silva dep. p. 72-73).

The evidence permits a reasonable jury to find that climbing mountains, a duty not listed in the position description, was not an essential function of Silva's position. Therefore, Silva could perform the essential functions of the position without an accommodation, and is a "qualified" employee.

Alternatively, Silva could have performed the essential duties of the position if Defendant were to assign him to the El Paso electronics branch. After his second injury, Silva approached Narciso Retana, who was supervisor of the electronics branch in El Paso, about working there.

(Silva dep. p. 28, Retana dec. ¶ 7). Retana told him that the shop was bogged down with a lot of work, and there was an open position which was available to Silva. (Silva dep. p. 28, Retana dec. ¶ 7). Silva could have either been transferred to the electronic's shop to fill one of the vacancies, making the transfer permanent, or he could have been transferred there on a temporary basis, as had been done for younger injured employees in the past. (Retana dec. ¶ 8). If Silva had been transferred to this position, he would have been able to work without having to climb. (Retana dec. ¶ 12). Silva believed that he would not be hurt again if he was permitted to work in that position. (Silva dep. p. 112-13).

Silva asked Defendant to put him to work as a technician in El Paso, which involved working outdoors part of the time and bench work part of the time. (Silva dep. p. 101, 110-11). Specifically, he requested to be put to work in the electronic shop in El Paso. (Silva dep. p. 111). Retana informed Woo that he had room for Silva, and that he would like to have Silva transferred to his shop. (Retana dec. ¶ 7). Retana expected Silva to be transferred into that position, and he even gave Silva a date when he would be hired. (Silva dep. p. 28, Retana dec. ¶ 7). However, when that date came, Retana told Silva that management did not want him going there, so the position had been pulled. (Silva dep. p. 28). The only person who could have blocked Silva's transfer to the new position was Estep. (Silva dep. p. 50, Retana dec. ¶ 9).

Silva advised the personnel director, Mr. Palacios, that he could go to work in any of the five electronic shops. (Silva dep. p. 45). Although there was a position available at the electronics shop, the only position Defendant would offer to Silva was the LECA job. (Silva dep. p. 45). Defendant refused to offer him any position other than the LECA role. (Silva dep. p. 106).

The Fifth Circuit has recognized that transfer to a position which does not include the conditions or duties conflicting with the plaintiff's disability can be a reasonable accommodation. *See, e.g., Riel v. Electronic Data Systems*, 99 F.3d 678, 683 (5th Cir. 1996). This case is distinct

from those cited in Defendant's motion, which hold that employers are not required to create new jobs or reassign employees to occupied positions in order to accommodate them. In this case, there was actually an open position available to Silva in the electronics shop. (Retana dec. ¶ 7). Defendant had transferred injured employees into that position previously, and transferring Silva to that role would have been a reasonable accommodation. Since Silva could have performed the essential duties of the position with this accommodation, Defendant is not entitled to summary judgment based on the claim that he was not qualified.

### C. Defendant violated the Rehabilitation Act by refusing to grant Silva a reasonable accommodation.

An employer unlawfully discriminates when it fails to make a reasonable accommodation to the disability of an employee. *See Bennett-Nelson v. Louisiana Board of Regents*, 431 F.3d 448, 454 (5th Cir. 2000) ("both the ADA and the Rehabilitation Act impose upon public entities an affirmative obligation to make reasonable accommodations for disabled individuals"); *see also Price v. Marathon Cheese Corp.*, 119 F.3d 330, 336 (5th Cir. 1997), *citing* 42 U.S.C. § 12112(a) (defining "discrimination" to include "not making reasonable accommodations" to the limitations imposed by a disability); *see also* 29 U.S.C. § 794(d) (adopting ADA standards for Rehabilitation Act claim).

Defendant refused to provide a reasonable accommodation when it denied Silva a transfer to the position of technician in the El Paso electronics shop. As noted above, the Fifth Circuit has recognized that transfer to a position which does not include the conditions or duties conflicting with the plaintiff's disability can be a reasonable accommodation. *See, e.g., Riel v. Electronic Data Systems*, 99 F.3d 678, 683 (5th Cir. 1996). As detailed above, there was a position available in the electronics shop, and Silva was qualified for that position. He told Defendant that he wanted to be transferred into that position, and the supervisor there confirmed that he was willing to hire Silva. Nonetheless, Defendant refused to offer Silva any accommodation besides the LECA position – even

though both Silva's physician and the LECA supervisor confirmed that Silva should not hold that position. (Silva dep. p. 43-45, 97-98). The evidence raises a genuine issue for the jury as to whether Defendant discriminated in violation of the Rehabilitation Act when it refused to reasonably accommodate Silva by transferring him to the electronics shop.

### D.  Silva satisfied the administrative requisite to suit.

Defendant argues that Silva cannot bring this action for Defendant's decisions based on his perceived disability, claiming he has failed to satisfy administrative requisites to suit because his administrative complaint argued that Defendant had failed to reasonably accommodate his disability, but did not specify that the disability arose because he was regarded as having an impairment. However, the caselaw does not construe administrative charges so narrowly. In a keystone case, *Sanchez v. Standard Brands, Inc.*, the Fifth Circuit explained the broad construction given to an EEOC charge. *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455 (5th Cir. 1970).

The *Sanchez* Court first noted that because of the remedial and humanitarian underpinnings of the antidiscrimination laws, and the crucial role played by private litigants in the enforcement of those laws, courts have been "extremely reluctant to allow procedural technicalities to bar claims . . . ." *Sanchez*, 431 F.2d at 460-61. In this context, the Fifth Circuit found it "inconceivable that a charging party's rights should be cut off merely because he fails to articulate correctly the legal conclusion emanating from his factual allegations." *Id.* at 462. The Fifth Circuit later noted that the civil rights statutes are "designed to protect those who are least able to protect themselves." *Gamble v. Birmingham So. Railroad Co.*, 514 F.2d 678, 689 (5th Cir. 1975).

For these reasons, "the only procedural requirement which should confront a Title VII complainant is the requirement that he state, within the [statutory] period, *facts* sufficient to trigger a Commission investigation." *Sanchez*, 431 F.2d at 462 (emphasis in original). The scope of a judicial complaint is limited only to the scope of the investigation which can reasonably be expected

to grow out of the charge of discrimination. *Id.* at 466. The *Sanchez* Court therefore concluded that the plaintiff in that case could pursue a claim for discrimination based on national origin, even though she had only checked the box for "sex" discrimination when filing her EEOC charge. *Id.* at 462. The *Sanchez* principle has been concisely summarized as follows:

> [A] cause of action for Title VII employment discrimination may be based, not only upon the specific complaints made by the employee's initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the charges of discrimination.

*Fellows v. Universal Restaurants, Inc.*, 701 F.2d 447, 450-51 (5th Cir. 1983).

It is undisputed that Silva filed an administrative complaint of discrimination on the basis of disability and asserted that Defendant had denied him reasonable accommodation. It defies logic to claim that discrimination based on Defendant's perception of Silva as disabled is not "like or related to" his allegation of discrimination based on disability and failure to grant a reasonable accommodation, or that an investigation of his charge could not reasonably expect to consider discrimination on this basis. *Compare Haynes v. BlueCross and Blueshield of Texas, Inc.*, no. 3:97-CV-2881-R, 2000 U.S.Dist.Lexis 1625 (N.D. Tex. 2000) (holding that unequal pay claim could be asserted although not included in EEOC charge because it could reasonably grow out of a retaliation claim, since it is reasonable to believe that EEOC investigation would include comprehensive inquiry into how employer retaliated against employee). Defendant is not entitled to dismissal of the disability discrimination claim on the basis of an alleged failure to exhaust administrative remedies.

### IV.     Plaintiff suffered an adverse employment action.

Defendant seeks summary judgment on Silva's Title VII and ADEA claims based on the contention that he was not subjected to an adverse employment action. As discussed above, the

refusal to grant Silva a reasonable accommodation is itself actionable under the Rehabilitation Act, so the additional "adverse employment action" analysis should not be applicable to this claim.

"Adverse employment actions can include discharges, demotions, refusals to hire, refusals to promote, and reprimands," but this list is nonexclusive. *Sharp v. City of Houston*, 164 F.3d 923, 933 & n. 21 (5th Cir. 1999). Although Title VII "mentions specific employment decisions with immediate consequences, the scope of the prohibition is not limited to economic or tangible discrimination, and . . . it covers more than terms and conditions in the narrow contractual sense." *Faragher v. City of Boca Raton*, 524 U.S. 775, 786, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (internal citations and quote marks omitted). The text of Title VII lists numerous employment-related decisions within the realm of adverse employment actions which cannot be predicated on race: it is an unlawful employment practice for an employer to fail or refuse to hire any individual because of his protected characteristic. 42 U.S.C. 2000e-2(a)(1). It is also an unlawful employment practice for an employer to "otherwise discriminate against any individual with respect to . . . .privileges of employment" because of such protected characteristic. *Id.* It is likewise unlawful for an employer to "limit … employees in any way which would deprive or tend to deprive any individuals of employment opportunities" because of their protected characteristic. 42 U.S.C. 2000e-2(a)(2). A transfer, itself, may serve as an adverse employment action. *Sharp*, 164 F.3d at 933, *citing Forsyth v. City of Dallas*, 91 F.3d 769, 774 (5th Cir. 1996).

Although Defendant contends that its only adverse action was denying Silva a transfer into the electronics shop, the effect of this decision was that Silva was suspended from work entirely, and eventually terminated. The only position which Defendant would allow Silva to fill was the LECA position. However, both Silva's physician and the LECA supervisor agreed that he should not hold that post. (Silva dep. p. 43-45, 97-98). As a consequence, Silva was not merely denied a transfer; he was suspended from all work, without pay, and was ultimately terminated. The suspension and

termination of Silva represent adverse employment actions.  Defendant is not entitled to summary judgment on this basis.

## V.     Silva was treated less favorably than similarly situated employees.

Defendant alternatively argues that there is no evidence of Silva being treated less favorably than similarly-situated employees.  To the contrary, there is abundant evidence that after his injury, Silva was treated differently from other worker who had been injured but were younger, or were not of the same national origin as Silva.

Specifically, Silva and John Page, a non-Hispanic employee, were both injured at the date of Silva's first injury, and both required surgery.  (Silva dep. p. 54, 79).  Two weeks after Silva's operation, he called Estep to tell him he would be back to work the following Monday.  (Silva dep. p. 88).  Estep asked him if he was "a hundred percent."  (Silva dep. p. 88).  Silva advised him that he had restrictions.  (Silva dep. p. 88).  Estep then told Silva that he would not be allowed to return to work unless he was "a hundred percent."  (Silva dep. p. 53, 88).

By contrast, after Page had his knee operated on, Estep ordered Silva to call Page and tell him to come in to work.  (Silva dep. p. 54).  Estep instructed Silva that Page was to come in and work on light duty.  (Silva dep. p. 54).  Specifically, Estep stated that Page was to come in and work only the radios, while Silva would be doing the rest of the work.  (Silva dep. p. 54).

The treatment of Silva also differed from Defendant's treatment of numerous other employees younger than Silva, who were permitted to return to work without climbing duties when they were injured.  (Retana dec. ¶ 11).  Another non-Mexican-American employee, Robert Patterson, was given extended light duty and accommodated by having a position created just for him, because he could no longer climb.  (Retana dec. ¶ 11).  The evidence raises a genuine issue of fact for the jury as to whether Silva was treated differently from similarly-situated employees who

were not within his protected category. Defendant's motion for summary judgment should be denied.

## VI.     Prima facie case of retaliation

Defendant also argues that the evidence does not raise a fact issue as to Silva's prima facie case of retaliation based on his opposition to discrimination. An employee's internal complaint of discrimination is "protected activity" which an employer may not retaliate against the employee for taking. *Fierros v. Texas Dept. of Health*, 274 F.3d 187, 194 (5th Cir. 2001). Opposition to discrimination also need not be in formal written form; informal verbal complaints constitute protected activity. *Beckvar v. Home Depot U.S.A., Inc*., No. Civ.A.-H-03-3061, 2005 WL 1155697 at *5 (S.D. Tex. 2005), *and cases cited therein*. The statute does not require the employee to participate in formal opposition to an employment practice; rather, the prohibition of retaliation also protects employees who use informal methods to voice their complaints. *Erlinger v. DeAmerica Corp.*, No. 3:98-CV-2866-P, 2000 U.S.Dist.Lexis 5829 (N.D. Tex. 2000), *citing Sumner v. United States Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990) ("In addition to protecting the filing of formal charges of discrimination, [the] opposition clause protects as well informal protests of discriminatory practices."). Such informal means include "making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers who have filed formal charges." *Id.* Furthermore, "There is no requirement that a plaintiff must prevail on any underlying claim of intentional discrimination in order to prevail on a claim of retaliation." *Vadie v. Mississippi State Univ.*, 218 F.3d 365, 374 n. 24 (5th Cir. 2000).

At this threshold stage, the standard for showing a causal relationship between opposition to discrimination and protected activity is "much less stringent" than a "but for" causation standard. *Fierros v. Texas Dept. of Health*, 274 F.3d 187, 191 (5th Cir. 2001). A plaintiff may establish the

prima facie case of retaliation by showing that the protected activity and the adverse employment action were "not wholly unrelated." *Simmons v. Camden County Bd. of Educ.*, 757 F.2d 1187, 1190 (11th Cir. 1985). A short lapse of time between a protected activity and an adverse employment action may alone establish the prima facie case. *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001). A "time lapse of up to four months has been found sufficient to satisfy the causal connection for summary judgment purposes." *Id.*

It is undisputed that Silva complained of discrimination on July 3, 2003. (Def.'s statement of facts, ¶ 44). Therefore, Silva was protected from retaliation on the basis of this discrimination complaint. On July 10, 2003, Defendant again offered Silva the LECA position as the only position purportedly matching his physical limitations. (Def.'s ex. 17). It made this offer even though Silva had asked Defendant to put him to work in the electronic shop in El Paso, and there was a position open there. (Silva dep. p. 111, Retana dec. ¶ 7). It made this offer even though both Silva's physician and the LECA supervisor confirmed that Silva should not hold the LECA position. (Silva dep. p. 43-45, 97-98). On August 28, 2003 – less than two months after he complained of discrimination – Defendant first proposed to terminate Silva. (Def. ex. 19). The lapse of less than two months between Silva's protected activity and the decision to terminate him suffices in itself to raise an issue for the jury on Silva's prima facie case of retaliation. *Evans, supra*. Defendant's motion for summary judgment cannot be granted on the basis of this argument.

**VII.  Defendant's stated reason for its employment decision is pretextual.**

Because the evidence establishes a prima facie case of discrimination and/or retaliation, the *McDonnell-Douglas* inquiry moves to the third phase, which allows the plaintiff to prevail if the evidence permits a reasonable jury to find the stated reason for the employment action pretextual. *See generally Reeves,* 530 U.S. at 148. Evidence sufficient to raise a genuine issue of fact as to whether an employer's proffered explanation is pretextual may take a variety of forms. *Furnco*

*Constr. Corp. v. Waters*, 438 U.S. 567, 578, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978). Pretext may be shown either directly, by showing that a discriminatory reason more likely motivated the employer; or indirectly, by showing that the employer's proffered reason is unworthy of credence. *Thornbrough*, 760 F.2d at 639, *quoting Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed. 2007 (1981). An employee establishes pretext by revealing such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered reasons for its actions that a reasonable factfinder could find them unworthy of credence. *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1198 (10th Cir. 2000). The summary judgment evidence raises a triable fact issue as to whether Defendant's stated reasons for its employment decisions are pretextual, barring summary judgment.

Defendant's stated reason for its action is that it "had no permanent light duty positions available in the Electronic Branch." (Def.'s mtn., p. 18). To the contrary, there were permanent positions available, and the supervisor of the branch, Narciso Retana, agreed to have Silva fill one of those positions. (Retana dec. ¶ 7, 8, 9). Estep blocked Silva's transfer to that position. (Retana dec. ¶ 9, Silva dep. p. 50). This evidence alone demonstrates pretext in Defendant's stated reason for its decision, permitting a jury to infer that discrimination or retaliation played a role in the employment decision. *Reeves,* 530 U.S. at 148.

Additional evidence that Defendant's stated reason is merely a pretext for discrimination is provided by the evidence that Estep was hostile to Silva from the date he was hired. (Silva dep. p. 23). Estep specifically told Silva when he was hired that he wanted a "young man" for the position. (Silva dep. p. 56-57). Based on his observation of Estep, it was apparent to Retana that Estep preferred not to have Mexican-American employees working with him. (Retana dec. ¶ 14). He gave Silva no training on how to work the equipment. (Silva dep. p. 26, Estep dep. p. 57). Estep would not permit Silva to even work on radios or walkie-talkies, but limited him to working on sensors,

despite his extensive knowledge and skills in the electronics area. (Silva dep. p. 8, 25-26, Estep dep. p. 39, Retana dec. ¶ 4). This appeared to Retana to be an intentional effort by Estep to make Silva feel inferior to or less than other employees. (Retana dec. ¶ 14). Page was given more favorable treatment than Silva. (Silva dep. p. 64-65). Page and Silva did the same work every day, but Page received "excellent" job evaluations while Silva received the lower evaluation of "fully successful." (Silva dep. p. 65, 17-20). After Silva's injury, Estep stated that if Silva were sent back to work under him, he would make sure to "get rid of him" within 30 days. (Retana dec. ¶ 6). This evidence permits a jury to conclude that Estep was determined to terminate Silva's employment for reasons unrelated to his job performance, and that the stated reason for Defendant's actions is merely a pretext for discrimination or retaliation. Defendant's motion for dismissal or summary judgment should be denied.

**VIII.   Jury trial and compensatory damages in ADEA case.**

Defendant argues that as a federal employee, Plaintiff is not entitled to a jury trial on his ADEA claim, citing *Lehman v. Nakshian*, 453 U.S. 156 (1981). Defendant is correct; the ADEA does not grant federal employees the right to jury trials.[1] *Lehman* was legislatively overruled by the Civil Rights Act of 1991, to the extent its holding denied a trial by jury in Title VII actions. *See Alexander v. Gerhardt Enterprises*, 40 F.3d 187 (7th Cir. 1994); *Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1156 (2nd Cir. 1992). However, the ADEA was not similarly revised. Therefore, Silva does not have the right to a jury trial of his ADEA claim.

However, even where a party does not have a right to trial by jury, the Court has discretion to empanel an advisory jury whose verdict is not binding. Fed.R.Civ.P. 39(c). In this case, Plaintiff has asserted several causes of action in which he is entitled to a jury trial. Since the underlying facts

---

[1] However, Defendant's statement that "The ADEA does not expressly grant a right to a jury trial" is overbroad, since such a right is expressly granted for private actions. 29 U.S.C. § 626(c)(2).

substantially overlap, trying the matters separately would defeat judicial economy. The Court should permit the ADEA claim to be tried to the jury together with Plaintiff's other causes of action, and have the jury return an advisory verdict on that claim. *See Goar v. Compania Peruana de Vapores*, 688 F.2d 418, 419 (5th Cir. 1982) (noting that district court empaneled jury to hear portion of consolidated case on which jury trial right existed, and to return advisory verdict on remaining claims).

Defendant is also correct that compensatory damages, as that term is used under Title VII to refer to mental anguish and similar nonpecuniary losses, are not available in an action under the ADEA alone. *Smith v. Berry Co.*, 165 F.3d 390, 396 (5th Cir. 1999). Thus, in the event Silva prevails only on this cause of action, he agrees that he may not recover for this category of losses.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that the Court deny Defendant's motion to dismiss or for summary judgment, and for such other relief to which he may be justly entitled.

    Respectfully submitted,

    **THE LAW OFFICE OF**
    **FRANCISCO X. DOMINGUEZ**
    521 Texas Ave
    El Paso, Texas 79901
    (915) 532-5544
    Fax (915) 532-5566


    /s/ *Francisco X. Dominguez*
    **FRANCISCO X. DOMINGUEZ**
    Texas Bar no. 00795324
    ATTORNEY FOR PLAINTIFF

## **CERTIFICATE OF SERVICE**

      I hereby certify that on November 28, 2006 I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Magdalena Jara
Assistant U.S. Attorney
700 E. San Antonio, Suite 200
El Paso, Texas 79901
Magdalena.Jara@usdoj.gov


       /s/  *Francisco X. Dominguez*
      **FRANCISCO X. DOMINGUEZ**